IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ADAM R. PHILLIPS,

                Plaintiff,              OPINION AND ORDER

    v.

                                         19-cv-778-wmc

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Adam R. Phillips seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act. Phillips contends that remand is warranted because the administrative law judge ("ALJ"): (1) failed to consider whether he met Listing 12.05C; (2) erred in "playing doctor" and making her own medical findings without adequate support; and (3) erred in assessing the weight of Dr. Raymond List's opinions. Because the court agrees with plaintiff that the ALJ impermissibly played doctor, including in particular assessing Dr. List's opinions, the court will remand this case for further review.

BACKGROUND[1]

**A. Overview**

Plaintiff Adam Phillips applied for social security disability benefits and social security supplemental insurance benefits on September 30, 2015. With a birth date of July 1, 1982, Phillips was a "younger individual" on the alleged disability onset date and

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #8. In light of the nature of the challenges raised on appeal, which all concern his mental limitations, the court will cabin its description of the record to matters relevant to those challenges.

has remained in this category throughout this review process. 20 C.F.R. §§ 404.1563, 416.963. Phillips claimed disability based on asthma, herniated discs, degenerative disc disease, ADHD and depression. (AR 88.) Finally, he had not engaged in substantial gainful activity during the time material to his application.

### B. ALJ Decision

ALJ Deborah E. Ellis held a hearing by videoconference on April 12, 2018, at which plaintiff Phillips appeared personally and by counsel. As of his alleged onset date of July 1, 2015, the ALJ found that Phillips suffered from the following severe impairments: degenerate disc disease and cognitive disorder. (AR 35.) The ALJ then considered whether Phillips' impairments or combination of impairments met or medically equaled one of the criteria for the Social Security Part A Listings of Impairments. 20 C.F.R. § 404.1525(b)(1). Material to plaintiff's challenges on appeal, the ALJ considered whether Phillips' mental impairments satisfied the listings for 12.02 (neurocognitive disorders) and 12.04 (depressive, bipolar and related disorders), finding that he did not meet the criteria for either listing. Specifically, the ALJ concluded that with respect to the "paragraph B" criteria, Phillips had: moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentrating, persisting or maintaining pace ("CPP"); and mild limitations in adapting or managing oneself. (AR 37-38.)

In creating a residual functional capacity ("RFC"), the ALJ specifically found that Phillips had the capacity to perform light work, except that he should be able to change positions every 30 minutes and be off-task less than ten percent of the work-day. The ALJ

also limited him to only occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, ropes or scaffolds. Lastly, the ALJ indicated that Phillips could "perform simple and routine tasks with simple oral instructions." (AR 38.)

The ALJ then described her reasons for this RFC and, specifically, her reasons for rejecting more significant limitations. With respect to his mental limitations, the ALJ discussed the October 2016 psychological evaluation with Rebecca Angle, Ph.D., who found: (1) Phillips' "thoughts were logical and coherent"; (2) he was able to repeat four digits in reverse, recall one out of three items out of a delay, name the current and most recent president, knew how many months it was until Christmas, was able to follow a three-step command, and spelled "world" forward and backward; and (3) he reported being "able to maintain his concentration for up to two hours while playing a videogame, and . . . his activities of daily living were performed in a timely manner." (AR 42 (citing Ex. 7F/2).) The ALJ also noted Angle's opinion that Phillips "did not appear particularly motivated to work, and he identified his back issue as his primary barrier to successful employment." (AR 42 (citing Ex. 7F/3).) The ALJ placed "significant weight" on these opinions of Dr. Angle because she "had the benefit of examining the claimant and based her opinion on objective tests," emphasizing Angle's "expertise and thorough examination of the claimant." (AR 43.)

Although not noted in the ALJ's summary of Dr. Angle's evaluation, she also found that Phillips met the criteria for a "depressive disorder." (AR 534.) Dr. Angle further noted that Phillips: (1) "has the ability to understand, remember and carry out simple instructions that might be given to him"; (2) "reported that he gets along with supervisors and coworkers and has no problems maintaining attention or an appropriate work pace";

3

and (3) "said that in the past when he experienced work stress he asked for help." (AR 535.)

The ALJ next reviewed Phillips' cognitive tests, which were administered by Raymond List, Ph.D. Specifically, the ALJ noted that in December 2016, Phillips was assessed with a ADHD and a learning disability, having receiving the following scores on the Conner's Test for Premorbid Functioning: immediate recall -- 61; delayed recall -- 56; language -- 74; visuospatial -- 60; and attention -- 40. (AR 42 (citing Ex. 95/15).)[2] In February 2017, Phillips saw Dr. List again for a continuation of his cognitive assessment. Dr. List administered the Wechsler Adult Intelligence Scale-IV test, for which Phillips received the following score: full scale IQ -- 64; verbal comprehension -- 66; perceptual reasoning -- 75; working memory -- 74; and processing speed -- 62. (AR 42 (citing Ex. 9F/28).)[3]

Although only briefly summarized by the ALJ, Dr. List went on to opine that this testing indicated "moderate impairment in intellectual functioning," that Phillips "will be significantly limited in capability for comprehension as well as the ability to learn new skills"; and that "when he is able to learn some skills, he will be slower in applying any new skills or knowledge than 99% of his similar aged peers." (AR 566.) Phillips was also given

---

[2] The scale for this test appears to correspond to the IQ test scores described below in footnote 3. *See* "RBANS Update: Repeatable Battery for the Assessment of Neuropsychological Status," http://www.pearsonclinical.com.au/filemanager/uploads/Webinar%20Files/RBANS%20Update%20Webinar%20Workshop%20Handout%20VOK%20Pearson%20Clinical.pdf.

[3] The Wechsler Adult Intelligence Scale is "an IQ test designed to measure intelligence and cognitive ability in adults and older adolescents." "Wechsler Adult Intelligence Scale," Wikipedia, https://en.wikipedia.org/wiki/Wechsler_Adult_Intelligence_Scale. According to this scale, 69 and below is considered "extremely low," and 70-79 is classified as "very low." "IQ Classification," Wikipedia, https://en.wikipedia.org/wiki/IQ_classification.

the Wide Range Achievement Test-IV, for which he received the following scores: word reading -- 80; spelling -- 73; and math -- 65. (*Id.*(citing Ex. 9F/28 and 29).)[4] Dr. List explained that this test showed that Phillips "has barely functional reading skills" and "significantly limited math skills." (AR 567.) Based on these tests, therefore, Phillips was assessed with a "mild intellectual impairment."

Ultimately, Dr. List opined as follows:

> Phillips would be quite impaired at being able to learn new job skills that would make him competitive in the current job market. Furthermore, even if he were to obtain a full-time job, he would be quite impaired at being able to keep up with the pace of a normal work day. Therefore, results do indicate that as a result of the mild intellectual disability, he would be considered 100% totally and permanently disabled.

(AR 567.) As to this opinion in particular, the ALJ placed "little weight" on his opinion because it is "not supported by a majority of the objective medical evidence," and that he opined on issues reserved to the Commissioner. (AR 44.) Instead, the ALJ focused on List's findings that Phillips was "alert and oriented with a normal mood and affect," and that List was not certain if Phillips was bothered by ADHD symptoms. (AR 44.)

The ALJ next considered the opinion of the state agency consultants. In a report dated October 19, 2016, Lisa Fitzpatrick, Psy.D., opined that Phillips had no limitations in social functioning; mild limitations in concentration, persistence and pace; and no severe mental impairment. The ALJ purported to place some weight on this opinion because it is

---

[4] This test is "an achievement test which measures an individual's ability to read words, comprehend sentences, spell, and compute solutions to math problems." "Wide Range Achievement Test," Wikipedia, https://en.wikipedia.org/wiki/Wide_Range_Achievement_Test.

"supported by some objective medical evidence," citing to Dr. Angle's report as that objective medical evidence. (AR 43 (citing Ex 6A (AR 129-30).)

Finally, after finding that Philips has no past relevant work in light of his limited earnings history, the ALJ relied on the testimony of the vocational expert in concluding that there are jobs in the national economy in significant numbers that Phillips could perform, including bench assembler and production assembler positions. (AR 44-46.) As such, the ALJ concluded that Phillips was not disabled.

### C. Medical Record

Oddly, in his brief, plaintiff primarily summarized his medical records, detailing chronic neck and back pain. (Pl.'s Opening Br. (dkt. #11) 5-7.) However, since these records are not particularly material to his actual challenges on appeal, the court will not do the same.[5]

## OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that

---

[5] Plaintiff does briefly describe Dr. Lists' February 23, 2017, medical note, which is already described in greater detail above.

of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Accordingly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

Plaintiff raises three, related challenges on appeal: (1) the ALJ failed to consider whether he met Listing 12.05C; (2) she erred by "playing doctor" and making her own medical findings without adequate support; and (3) she erred in assessing the weight of Dr. Raymond List's opinions. The court addresses each challenge in turn below.

### I. Treatment of Listing 12.05C

In his opening brief, plaintiff presented a compelling argument that the ALJ should have considered Listing 12.05C, and if she had done so, she would have found Phillips met that listing criteria. While this argument initially struck the court as sufficient grounds for remand, if not reversal, the Commissioner rightly pointed out in his opposition brief, that this listing was no longer in effect at the time of the ALJ's decision, something plaintiff's counsel should have at least addressed. Regardless, as the Commissioner noted, for claims adjudicated after January 17, 2017, the Social Security Administration revised the criteria in the listings used to evaluate claims of intellectual disability, eliminating Listing 12.05C in the process. *See* Soc. Sec. Admin., Revised Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016). The Administration further explained that these

revised rules would be applied to "new applications filed on or after the effective date of the rules, and to claims that are *pending* on or after the effective date." *Id.* Moreover, as further explained in a footnote, "[t]his means that we will use these final rules on and after their effective date, in any case in which we make a determination or decision" and "expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." *Id.* at n.1.

In his reply brief, plaintiff acknowledges this change in the rules, but argues that the "action by the government is retrospective and contrary to procedural due process requirements." (Pl.'s Reply (dkt. #14) 5.) Ordinarily, the court does not even consider arguments raised for the first time in reply briefs. *See Wonsey v. City of Chi.*, 940 F.3d 394, 398 (7th Cir. 2019) ("[A]rguments raised for the first time in a reply brief are waived."). Even if it did, however, his argument has no merit. Regardless of whether the new rules changed (rather than simply clarified) existing law, the new rules were *not* applied to events before their promulgation. *See Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir. 1993), *overruled by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999) (retroactivity concerns applying a new law "to events prior to its promulgation"). Instead, the ALJ applied the current version of the rules at the time she issued her decision denying plaintiff's claim.

As such, this case is not like the circumstances in *Pope*, despite plaintiff's suggestion to the contrary in his reply brief. Indeed, in *Pope*, the rules changed between the ALJ's hearing and the issuance of the ALJ's opinion. *Id.* at 482 ("[T]he new regulations were promulgated after Pope's hearing."). Nor is this case like other social security appeals where the district court considered whether to apply the current version of a regulation or apply the one in place at the time the ALJ issued her decision. *E.g., Napper v. Berryhill*, No.

8

16-CV-1356, 2018 WL 1513031, at *6 (E.D. Wis. Mar. 27, 2018) (citing *Pope* to justify decision to "analyze the ALJ's decision based upon the standard used in his analysis," rather than based on a new regulation enacted after the ALJ issued his decision).

Here, the rule was announced in September 2016, with an effective date of January 17, 2017. Thus, the ALJ held the hearing in this case fifteen months *after* the effective date of this rule, on April 12, 2018, and issued her opinion, considering the appropriate listings by then in effect for seventeen months for cognitive limitations, on June 27, 2018. Accordingly, plaintiff's argument for retroactive application of the new rules is both too little and too late.

## II. Playing Doctor

Next, plaintiff contends that the ALJ erred by "playing doctor" and making her own medical findings without medical support. Specifically, plaintiff asserts that there is no medical opinion in this record supporting the ALJ's finding of Phillips moderate limitations in understanding, remembering or applying information and concentrating, persisting or maintaining pace. Instead, plaintiff contends that the ALJ relied on cognitive testing that occurred after the state agency consultant's review of the record to find moderate limitations, and in doing so, improperly played doctor. (Pl.'s Opening Br. (dkt. #11) 16 (citing *Vogel v. Saul*, No. 4:18-CV-36-JEM, 2019 WL 4200618, at *4 (N.D. Ind. Sept. 4, 2019)).) Further, plaintiff argues that the ALJ again played doctor in purporting to translate Phillips' cognitive impairment (and resulting moderate limitations in understanding, remembering or applying information and concentrating, persisting or

maintaining pace) to a limitation on his performing "simple and routine tasks with simple oral instructions" in the RFC.

In response, the Commissioner argues that the ALJ appropriately relied on Dr. Angle's report in assessing the paragraph B criteria and in translating those limitations in Phillips' RFC, and that there is nothing in the record to suggest that his "intellectual functioning deteriorated in the short period between Dr. Angle's October 2016 report and the December 2016 intelligence testing." (Def.'s Opp'n (dkt. #13) 14-15.) The problem with this argument is that neither Dr. Angle, nor the state agency psychiatrist, Dr. Fitzpatrick, opined that Phillips *had* a cognitive limitation; instead *the ALJ* included a cognitive disorder in her list of severe impairments. Equally important, neither Dr. Angle nor Dr. Fitzpatrick found that Phillips had moderate limitations in CPP.

Rather, Dr. Angle concluded that Phillips would have "no problems maintaining attention or an appropriate work pace," apparently based only on his account that he could pay attention to a videogame for up to two hours at a time. (AR 535.) Similarly, Dr. Fitzpatrick concluded that Phillips had only *mild* limitations in CPP. (AR 129-30.) As such, there is no basis for the Commissioner to argue now that the ALJ appropriately relied on Dr. Angle or the state agency psychiatrist's opinions from October 2016 to find that Phillips had a severe cognitive disorder impairment or to conclude that he had moderate limitations in CPP, much less to translate that into the performance of "simple and routine tasks with simple oral instructions" for purposes of formulating his RFC.

Alternatively, the Commissioner appears to suggest that it would be reasonable to infer that the ALJ relied on Dr. List's December 2016 and February 2017 cognitive tests in making her findings, despite the ALJ's statement that she placed little weight on his

opinions. However, the ALJ expressly did *not* adopt Dr. List's opinion that Phillips' cognitive challenges would in turn significantly impact his ability to learn new job skills and keep up with the pace of any competitive work. Having affirmatively rejected Dr. List's opinions, there is no other medical expert who reviewed these test results nor explained how Phillips' demonstrated cognitive deficits would translate with regard to his ability to work. While, as this court has recently held, there are certainly instances where the ALJ appropriately chose not to seek additional medical expert opinion in the face of new evidence that post-dated the opinions of the state agency physicians or other medical expert on which the ALJ relied, but, here, the ALJ implicitly viewed these cognitive tests as new *and material* evidence. *See Slayton v. Saul*, No. 19-cv-533, slip op. at *11 (W.D. Wis. May 27, 2020) ("[T]he dividing line between the *Goins* [*v. Colvin*, 764 F.3d 677 (7th Cir. 2014)] line of cases and the *Keys* [*v. Berryhill*, 679 F. App'x 477 (7th Cir. 2017)] line is the potential for this new medical evidence to be decisive."). Moreover, the ALJ at best "cherry picked" from Dr. List's finding as discussed below. Accordingly. the court agrees with plaintiff that the ALJ impermissibly relied on her own medical judgment, rather than that of a medical expert, to determine the impact of Phillips' severe cognitive limitations on his ability to work.

### III. Treatment of Dr. List's Opinion

Finally, plaintiff seeks remand based on the ALJ's treatment of Dr. List's opinion. Because the court agrees that the ALJ impermissibly used her own judgment to evaluate the significance of the cognitive test results on Phillips' RFC, the court need not spend much time on this challenge, other than to note that it, too, has merit. In discrediting Dr.

List's opinion, the ALJ offered two primary reasons: (1) it is "not supported by a majority of the objective medical evidence," and (2) he opined on issues reserved to the Commissioner. (AR 44.) As for the first reason, the Commissioner argues that the ALJ appropriately considered Dr. Angle's and Dr. List's respective opinions and placed greater weight on Dr. Angle's. However, as previously explained, Dr. Angle's opinion primarily concerned plaintiff's depression and ADHD diagnoses, without administering any cognitive tests or otherwise opining on any cognitive limitations. In that way, the two psychiatrists' opinions addressed different diagnoses entirely, and, therefore, the ALJ's blanket statement that Dr. Angle's opinions were supported by "objective evidence," while Dr. List's were not, requires further explanation and a logical bridge at best. Moreover, the reason the ALJ provided for placing significant weight on Dr. Angle's opinions -- that she "had the benefit of examining the claimant and based her opinion on objective tests," and because of her "expertise and thorough examination of the claimant" -- applies equally (if not more so) to Dr. List's opinions: he, too, examined Phillips, on at least two occasions; he, too, administered objective tests; and he, too, has expertise in assessing mental limitations. (AR 43.)

As for the ALJ's second reason for rejecting Dr. List's opinion -- that he opined on the ultimate issue of disability that is the exclusive purview of the Commissioner -- this rings equally hollow. While Dr. List did state that Phillips "would be considered 100% totally and permanently disabled," he also opined as to the specific impacts of Phillips' cognitive limitations on his ability to work. The ALJ offers no credible reason for discounting these views. Worse, as noted above, the ALJ's opinion discusses and disregards

only Dr. List's ultimate conclusions (AR 44), while ignoring entirely his detailed findings following two days of objective testing. *See* discussion *supra*. pp. 3-5.

While the court rejects plaintiff's first basis for review -- that the ALJ erred in her treatment of defunct Listing 12.05C -- for the reasons explained above, the court agrees that remand is warranted to further consider the impact of Phillips' December 2016 and February 2017 cognitive tests and Dr. List's findings as how Phillips' cognitive deficits disclosed by those tests (and expressly credited by the ALJ) impact his ability to work.

## ORDER

IT IS ORDERED that the decision of defendant Andrew M. Saul, Commissioner of Social Security, denying plaintiff Adam Phillips' application for disability and disability insurance benefits and supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the opinion set forth above.

Entered this 12th day of June, 2020.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge